H38iwasp ag                     PLEA

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          16 Cr. 477 KMK

5    TERRICK WASHINGTON,

6                   Defendant.

7    ------------------------------x

8                                          March 8, 2017
                                           2:45 p.m.
9                                          White Plains, N.Y.

10   Before:

11                    HON. KENNETH M. KARAS,

12                                      District Judge

13                         APPEARANCES

14   PREET BHARARA
          United States Attorney for the
15        Southern District of New York
     MARCIA COHEN
16        Assistant United States Attorney

17   FEDERAL DEFENDERS UNIT
          Attorney for Defendant
18   JASON SER

19

20                         PLEA

21

22

23

24

25

H38iwasp ag                     PLEA

| | |
|---|---|
| 1 | THE COURTROOM DEPUTY:  United States v. Terrick |
| 2 | Washington.  16 Cr. 477.  Counsel please note their |
| 3 | appearances. |
| 4 | MS COHEN:  Marcia Cohen for the government. |
| 5 | MR. SER:  Jason Ser, Federal Defenders, with |
| 6 | Mr. Washington. |
| 7 | THE COURT:  Good afternoon to you both.  Please be |
| 8 | seated.  All right.  So, Mr. Ser my understanding is that |
| 9 | Mr. Washington is going to enter a plea to Count 1 of the |
| 10 | information, is that right? |
| 11 | MR. SER:  Correct, your Honor.  That's the only count |
| 12 | in the information, I believe. |
| 13 | THE COURT:  And this is pursuant to an agreement dated |
| 14 | December 7, 2016, is that right? |
| 15 | MR. SER:  That is correct, your Honor. |
| 16 | THE COURT:  All right.  Mr. Washington, good |
| 17 | afternoon.  Mr. Ser, your attorney, advised us that you are |
| 18 | going to enter a plea of guilty to the one-count information, |
| 19 | is that correct? |
| 20 | THE DEFENDANT:  Correct. |
| 21 | THE COURT:  Before I accept your plea I'm going to be |
| 22 | asking you a series of questions.  You should know that there |
| 23 | are two reasons for these questions.  One is to make sure that |
| 24 | you're pleading guilty because you are guilty and that you're |
| 25 | not pleading for some other improper reason.  And the other is |

to make sure that you understand fully the consequences of

being convicted of this charge by way of a plea.  Obviously

this is a very important decision for you to make and it's a

decision you would not want to make or otherwise follow through

on unless you were 100 percent comfortable.  Accordingly, if at

any point during this proceeding you become uncomfortable

because of a question you're asked or because of something that

someone says or you just become uncomfortable and you want to

speak to Mr. Ser, just let me know that and you'll get as much

time as you need to talk to him.  Okay?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Are you able to understand

what I am saying?

THE DEFENDANT:  Yes.

THE COURT:  Are you able to understand, speak, read

and write English?

THE DEFENDANT:  Yes.

THE COURT:  I'm going to ask that you continue to

stand while you take the oath.

(Defendant placed under oath)

BY THE COURT:

Q.  Now that you have taken the oath you should understand that

all answers you give to the questions you are asked are subject

to the penalties of perjury.  Perjury is intentionally lying

under oath about an important or material matter and if you

H38iwasp ag                    PLEA

1   were to do that here today you could be prosecuted for the

2   crime of perjury which is separate and apart from the charge in

3   the information.  Do you understand that?

4   A.  Yes.

5   Q.  I'm sure Mr. Ser has gone over this with you but I just

6   want to give you a sense of how we're going to proceed here

7   this afternoon.  We're going to start off by talking about you.

8   You're going to be asked some questions about yourself.  Please

9   understand these are questions that are not meant to

10  unnecessarily pry into your personal life but these are

11  questions that are asked of everybody who says that he or she

12  wants to plead guilty and these are questions asked to assist

13  me in making a determination that you are ready, willing and

14  able to go forward today.  Thereafter, we're going to talk

15  about the very important subject of your constitutional rights

16  and we're going to focus on your trial rights, many of which

17  you would be giving up if you decide to plead guilty.  We're

18  then going to talk about the charge in the information, what

19  that charge is.  Also what types of facts or elements, as

20  they're called, that would have to be proven or established

21  before you could be convicted of this charge.  We're then going

22  to talk about the consequences you face including any maximum

23  and mandatory minimum sentences you face if convicted of this

24  charge.  We'll then talk about the plea agreement and what the

25  plea agreement is and what it's not.  And then we'll go over

H38iwasp ag                    PLEA

1   sentencing a little bit just so you understand how sentencing

2   works.  And then I'll asked Ms Cohen to summarize the proof

3   that the government would offer if you elected to go to trial.

4   And then you will be asked as to how you wish to plead.  You

5   can, of course, continue with your not guilty plea.  But if you

6   say you want to plead guilty you're going to be asked to

7   describe what you did that makes you believe you are guilty.

8   Okay?

9   A.  Yes.

10  Q.  Again, if you want to talk to Mr. Ser at any point during

11  this proceeding for any reason whatsoever, just say so and

12  you'll get as much time as you need to talk to him.  We are not

13  in a hurry.  Okay?

14  A.  Yes.

15  Q.  Let's start with you, Mr. Washington.  How old are you?

16  A.  45.

17  Q.  How far have you gone in school?

18  A.  10th grade.

19  Q.  Where was that?

20  A.  In Newark.

21  Q.  Have you ever been hospitalized or treated for narcotics

22  addiction?

23  A.  No.

24  Q.  Have you ever been addicted to narcotics?

25  A.  No.

H38iwasp ag                    PLEA

1   Q.  Are you now or have you recently been under the care of a

2   doctor or psychiatrist?

3   A.  No.

4   Q.  In the last 48 hours have you had any medicine, any pills,

5   any drugs or any alcoholic beverages?

6   A.  No.

7   Q.  How do you feel today?

8   A.  Good.

9   Q.  Do you feel like you understand fully what's going on here

10  today?

11  A.  Yes.

12          THE COURT:  Mr. Ser, do you have any reason to doubt

13  Mr. Washington's competence to enter a plea?

14          MR. SER:  No, your Honor.

15          THE COURT:  Ms Cohen?

16          MS COHEN:  No.

17          THE COURT:  I agree.  I find that Mr. Washington is

18  fully competent to enter this plea this afternoon.  That

19  finding is based on my observations of him during this

20  proceeding, as well as the answers he's given to the questions

21  he's been asked thus far, and the representations of counsel.

22  Q.  Mr. Washington, have you had enough time to talk to Mr. Ser

23  about this case?

24  A.  Yes.

25  Q.  In particular, have you had enough time to talk to him

H38iwasp ag                    PLEA

1    about any possible defenses you might have to the charge

2    contained in the information?

3    A.  Yes.

4    Q.  To date, are you satisfied with Mr. Ser's representation of

5    you?

6    A.  Yes.

7              THE COURT:  Has there been a waiver of indictment?

8              MR. SER:  Yes, your Honor.

9    Q.  The next thing we're going to discuss, Mr. Washington, is

10   the subject of your constitutional rights.  We're going to

11   focus on your trial rights.  Before we go over your rights

12   together there is a document which Mr. Ser has just placed

13   before you.  Could you take a look at that, please.  Do you

14   recognize that document?

15   A.  Yes.

16   Q.  Did you go over it with Mr. Ser before we started here this

17   afternoon?

18   A.  Yes.

19   Q.  Did Mr. Ser answer any questions you had about the document

20   to your satisfaction?

21   A.  Yes.

22   Q.  Do you feel you understand fully what the document says?

23   A.  Yes.

24   Q.  If you could take a look at the second page of the

25   document.  Is that your signature?

H38iwasp ag                    PLEA

1    A.  Yes.

2            THE COURT:  And Mr. Ser, is that your signature on the

3    third page?

4            MR. SER:  Yes, your Honor.

5            THE COURT:  Before you and Mr. Washington signed this

6    document you went over it carefully with him?

7            MR. SER:  I did.

8            THE COURT:  What we'll do at the end is mark that as

9    Court's Exhibit A.

10   Q.  Mr. Washington, obviously the subject of your

11   constitutional rights and your waiver of them is very important

12   so we're going to go over your constitutional rights here

13   together now even though that's somewhat duplicative of what's

14   in that document.  Okay?

15   A.  Yes.

16   Q.  Under the Constitution and laws of the United States, you

17   are entitled to a speedy and public trial before a judge or a

18   jury on all charges that are brought against you.  Do you

19   understand that?

20   A.  Yes.

21   Q.  At a trial, you would be presumed innocent and before you

22   could be convicted it would be the government's burden of

23   proving your guilt by competent evidence and beyond a

24   reasonable doubt.  Do you understand?

25   A.  Yes.

H38iwasp ag                        PLEA

1    Q.  If you were tried before a jury, before the jury could

2    return a guilty verdict, all of the jurors would have to agree

3    that the government met its burden of proving your guilt beyond

4    a reasonable doubt.  And again, you would not have the burden

5    of proving your innocence.  Understand?

6    A.  Yes.

7    Q.  During the trial and at all stages of this case, you have a

8    right under the Constitution to be represented by an attorney,

9    and if you could not afford an attorney, the Court would

10   appoint one to represent you.  Do you understand?

11   A.  Yes.

12   Q.  During the trial, you would have the right with the

13   assistance of your attorney to confront and cross-examine the

14   government's witnesses against you.  Do you understand that?

15   A.  Yes.

16   Q.  Moreover, your attorney could object to evidence he doesn't

17   think the government should be allowed to introduce, he could

18   offer evidence on your behalf, and he could force people to

19   testify on your behalf through the use of the Court's subpoena

20   power.  Do you understand that?

21   A.  Yes.

22   Q.  If you were convicted at a trial, you would have the right

23   to appeal the guilty verdict.  Do you understand that?

24   A.  Yes.

25   Q.  Also at this trial, if you wanted to, you would have the

1   right to testify on your own behalf and you would also have the

2   right not to testify, and you would have the right not to have

3   that choice held against you in any way whatsoever.  Do you

4   understand?

5   A.  Yes.

6   Q.  Even as you are entering this plea you have the right to

7   change your mind, continue with your not guilty plea and go to

8   trial on the charge that's been brought against you.  Do you

9   understand that?

10  A.  Yes.

11  Q.  But if you plead guilty and if I accept your plea you're

12  going to give up your right to a trial and the other rights

13  that we have just discussed other than your right to an

14  attorney which you have regardless of whether or not you plead

15  guilty.  Do you understand that?

16  A.  Yes.

17  Q.  And if you plead guilty and if I accept your plea, that

18  means there will be no trial and I will enter a judgment of

19  guilty and impose sentence after carefully considering what

20  Mr. Ser has to say about you or Ms Cohen has to say about the

21  sentence and what is also contained in what's known as the

22  presentence report.  Do you understand that?

23  A.  Yes.

24  Q.  Finally, Mr. Washington, if you plead guilty, you will have

25  to give up your right not to incriminate yourself because as I

H38iwasp ag                    PLEA

1    said at the end of this proceeding if you say you want to plead

2    guilty, you will have to not only admit to guilt but also

3    describe what you did that makes you believe that you're

4    guilty; in other words, you will have to admit and acknowledge

5    your guilt.  Do you understand that?

6    A.  Yes.

7    Q.  The next thing we're going to discuss is the charge

8    contained in the information.  Before we do that, have you been

9    given a copy of the information or otherwise gone over a copy

10   of the information with Mr. Ser?

11   A.  Yes.

12   Q.  You understand the information contains one charge against

13   you?

14   A.  Yes.

15   Q.  And that charge is that between at least on or about

16   November 6, 2015 up to and including November 28, 2015 here in

17   the Southern District of New York and elsewhere, that, using

18   facilities and means of interstate and foreign commerce, you

19   unlawfully, willfully and knowingly attempted to persuade,

20   induce and entice an individual who had not attained the age of

21   18 to engage in a sexual activity for which a person could be

22   charged.  In particular, it's alleged that in communications

23   over the Internet and phone that you attempted to persuade,

24   induce and entice an individual acting in an undercover

25   capacity and posing as a 13 year old girl to meet you at Orange

H38iwasp ag                    PLEA

1   County for the purpose of engaging in sexual activity.  Do you

2   understand that's the charge that's been brought against you in

3   Count 1?

4   A.  Yes.

5   Q.  And you should know that that charge is brought pursuant to

6   Title 18 United States Code 2422(b).  Do you understand that?

7   A.  Yes.

8        THE COURT:  Ms Cohen, if you could describe the

9   elements that would have to be proved or established before Mr.

10  Washington could be convicted of this charge.

11       MS COHEN:  The elements are:  First, that the

12  defendant used a facility of interstate commerce to attempt to

13  persuade or induce or entice or coerce the individual to engage

14  in sexual activity; that the defendant believed that such

15  individual was less than 18 years of age; that if the intended

16  sexual activity had occurred the defendant could have been

17  charged with a criminal offense; and that the defendant acted

18  knowingly and willfully.

19  Q.  What Ms Cohen has done is list the elements or types of

20  facts that would have to be proven at a trial or otherwise

21  established before you could be convicted of this charge.  Did

22  you follow what she said?

23  A.  Yes.

24  Q.  Now the next thing we're going to discuss is the subject of

25  consequences and we're going to start by talking about the

H38iwasp ag                    PLEA

1    punishment that you face.  Before we do that what I want to

2    emphasize to you is that as of this very moment, I do not know

3    what your sentence in this case will be and the reason for that

4    is because there's been no cause to think about that because as

5    of this very moment you have been convicted of nothing.  Do you

6    understand all that?  You're shaking your head yes but you have

7    to give an answer verbally.

8    A.  Yes, yes.

9    Q.  What are we talking about then?  What we're going to go

10   over is the maximum punishment you face based on laws passed by

11   Congress and any mandatory minimum punishment you face also

12   based on laws passed by Congress.  The reason for going over

13   this with you is not to hint or suggest or telegraph to you in

14   any way what your sentence will be but to make sure that you

15   are fully informed as to what it can be under the law before

16   you decide you want to plead guilty.  Okay?

17   A.  Yes.

18   Q.  If convicted of the one count in the information, you face

19   a mandatory minimum sentence of ten years imprisonment.  Do you

20   understand that?

21   A.  Yes.

22   Q.  The maximum is lifetime imprisonment.  Do you understand

23   that?

24   A.  Yes.

25   Q.  You also face a mandatory minimum of five years supervised

H38iwasp ag                    PLEA

1    release and a maximum of lifetime supervised release.  Do you

2    understand that?

3    A.   Yes.

4    Q.   Regarding the fine, you face the greatest of three numbers,

5    $250,000, or twice the financial gain to you as a result of the

6    offense conduct, or twice the financial loss anybody else

7    suffered as a result of the offense conduct.  Do you understand

8    that?

9    A.   Yes.

10   Q.   There's also a separate financial penalty called a special

11   assessment.  It's like a fine.  Here the amount is one hundred

12   dollars, no more, no less, I have no choice over that.  Do you

13   understand that?

14   A.   Yes.

15   Q.   In addition to all this you could be required to make

16   restitution, that is, financially compensate anybody who lost

17   money or property as a result of the offense conduct.  Do you

18   understand all that?

19   A.   Yes.

20   Q.   On supervised release, as I said, you face a minimum of

21   five years and a maximum of lifetime supervised release.  I

22   want to make sure you understand what supervised release is and

23   that you understand a particularly important aspect of it.  So

24   first, as the phrase implies, supervised release is a period of

25   time after you finish serving your sentence, the imprisonment

H38iwasp ag                    PLEA

portion of your sentence, where you would be supervised by the

Probation Office.  And the reason you are subject to the

Probation Office's supervision is that while you are serving

this portion of your sentence you have to live by what's called

terms and conditions.  They're basically rules.  And these

terms and conditions are shared with you at the time of

sentencing.  And again because I don't know what your sentence

will be I don't know exactly what terms and conditions will be

imposed in your case.  But by law everybody who is serving a

federal sentence has to live by the condition that he or she

not break any other laws, that he or she not possess any type

of guns or drugs, and there are other conditions imposed at the

time of sentencing.  Do you understand that?

A.  Yes.

Q.  The important piece of it you should know is that if you

violate any of these so-called terms and conditions of

supervised release, in other words if you break the rules, then

you could go back to jail for up to --

          THE COURT:  Is it three years, Ms Cohen?

          MS COHEN:  I believe so, yes.

Q.  You could go back to jail for up to three years if you

violate any of these terms and conditions.  Do you understand

that?

A.  Yes.

Q.  And if you do get sentenced to jail for violating the terms

H38iwasp ag                    PLEA

1   and conditions of supervised release, you don't get credit for

2   the time you served in jail before you started supervised

3   release, and also you don't get credit for the time you were

4   out on supervised release and complying with all the terms and

5   conditions.  Do you understand that?

6   A.  Yes.

7   Q.  Let me give you an example just so it's clear but stressing

8   again not to read into this example what your sentence will or

9   will not be because I don't know.  Let's say you get sentenced

10  to some term of imprisonment and five years supervised release.

11  During the first four and a half years you are in perfect

12  compliance.  But at the very end you break a state law.  Then

13  in this example you could go to jail for up to three years,

14  that's the maximum for violating supervised release conditions.

15  Do you understand that?

16  A.  Yes.

17  Q.  You wouldn't get credit for the four and a half years you

18  were in perfect compliance.  And you wouldn't get credit for

19  the time you were in jail.

20  A.  I understand.

21  Q.  If the violation is of a state law, the federal sentence

22  and the state sentence could be consecutive to one another.  Do

23  you understand that?

24  A.  Yes.

25  Q.  Mr. Washington, are you a citizen of the United States?

H38iwasp ag                    PLEA

1   A.  Yes.

2   Q.  Are you a citizen of any other country?

3   A.  No.

4   Q.  There are a couple of other consequences that you should be

5   aware of if convicted of the one count in the information.  The

6   first is you could become deprived of certain valuable civil

7   rights which might include the right to vote, the right to hold

8   public office, the right to serve on a jury, the right to

9   possess any kind of a firearm, the right to be considered for

10  certain types of employment or to be bonded or to serve in the

11  U.S. military, as well as the right to obtain and possess

12  certain government-issued licenses that might be necessary for

13  certain professions and occupations.  Do you understand that?

14  A.  Yes.

15  Q.  Also you could be required if convicted of this offense to

16  meet the obligations of the Sex Offender Registration and

17  Notification Act which is a federal law that requires you to

18  register and keep the registration current in each jurisdiction

19  where you might live, where you might work, where you might

20  study, and these registration requirements include providing

21  your true name, your address including your residential address

22  as well as any other addresses of places where you might be

23  working or studying.  Do you understand all that?

24  A.  Yes.

25  Q.  All right, the next thing we're going to talk about is

H38iwasp ag                    PLEA

1    sentencing.  Some things you should know about sentencing.  The

2    first thing you should know is that the determination as to

3    what your sentence will be in this case is solely my decision.

4    It is not Mr. Ser's decision, it's not Ms Cohen's decision,

5    it's not the decision of anybody in the United States

6    Attorney's Office.  I will, of course, consider the arguments

7    of the lawyers, both made in writing and orally in court.  But

8    I'm not required to follow what they say.  Do you understand?

9    A.  Yes.

10   Q.  The second thing you should understand is that regardless

11   of what happens at sentencing, the sentence that you receive is

12   not a basis for you to take back or withdraw your guilty plea

13   once it is entered and received.  Do you understand that?

14   A.  Yes.

15   Q.  If it so happens that I impose a sentence that was arguably

16   illegal, Mr. Ser and his colleagues could argue that to the

17   Court of Appeals, and if the Court of Appeals agreed that the

18   sentence was wrong, all that would happen is that you would be

19   resentenced.  You would not get your plea back.  Do you

20   understand?

21   A.  Yes.

22   Q.  Finally, just so you know how sentencing works, at

23   sentencing the Court's task is going to be to determine what

24   sentence is sufficient but no more than necessary to achieve

25   the goals of the sentencing laws as they apply to you and to

H38iwasp ag                     PLEA

1   this case.  To do that I am required to take into consideration

2   a number of facts, they are factors, and they're all set out in

3   the statute passed by Congress.  They include, for example,

4   your personal history, everything about your personal history.

5   They include the nature of the offense conduct and the

6   seriousness of it.  They include the need to deter others and

7   yourself from committing this type of offense.  And they

8   include, among other factors, something known as the Sentencing

9   Guidelines.

10         Now the guidelines are an attempt to calculate a range

11  of imprisonment that applies to your case.  And because it's a

12  range there's a low end and a high end.  And it's calculated in

13  months.  And the guidelines calculations itself involves

14  consideration of a number of factors, nature of the offense

15  conduct, maybe any criminal history you might have.  Do you

16  understand that?

17  A.  Yes.

18  Q.  The guidelines do not set the boundaries of your sentence.

19  Even though there's a low and a high end of the range, I don't

20  have to impose a sentence within that range.  I can, if it

21  turns out that I think the sentence I think is appropriate

22  actually falls in that range, I can impose that sentence.  If I

23  determine that the sentence I think is appropriate falls

24  outside that range, either above or below the range, then I can

25  impose the sentence.  But I cannot go below the 120 month

H38iwasp ag                    PLEA

1    minimum, the ten-year minimum that applies to your case and I

2    can't go above the max of life.  Do you understand how all that

3    works?

4    A.  Yes.

5            MS COHEN:  I'm sorry, I actually think that, going

6    back to the supervised release, I actually believe that it

7    would be, if his supervised release was revoked, the Court

8    could resentence to five years because it's a Class A felony.

9    Q.  Earlier, Mr. Washington, I mentioned that if you violate

10   the terms and conditions of supervised release you could go

11   back to jail.  Do you recall that?

12   A.  Yes.

13   Q.  What I told you was the maximum amount of imprisonment you

14   could get for violating the supervised release conditions would

15   be three years, do you remember that?

16   A.  Yes.

17   Q.  That was an error on my part.  The maximum is five years,

18   not three.  You have to erase that, what I said.  Do you

19   understand that?

20   A.  Yes.

21   Q.  If you were to violate any of the terms and conditions of

22   supervised release the so-called rules you could go to jail for

23   up to five years.  Do you understand that?

24   A.  Yes.

25            THE COURT:  Anything else on that subject?

1          MS COHEN:  No, thank you.

2          THE COURT:  Mr. Ser, anything else on that subject?

3          MR. SER:  No, your Honor.

4    Q.  Has anybody threatened you or forced you in any way to

5    enter a guilty plea?

6    A.  No.

7    Q.  My understanding is that you're pleading guilty pursuant to

8    an agreement you have with the government dated December 7,

9    2016, is that right?

10   A.  Yes.

11         THE COURT:  Mr. Ser, I take it you have the original

12   there?

13         MR. SER:  I do.

14         THE COURT:  You'll note the initials that appear next

15   to the docket number, which is a $50 fine for Ms Cohen.

16         MS COHEN:  I'm so sorry.

17         THE COURT:  It's been a while, Ms Cohen, since I've

18   been able to impose a $50 fine on you.

19         MR. SER:  The criminal number is off too.

20         THE COURT:  They usually go together on that.  If you

21   typed this document it would be on you.

22         MS COHEN:  It's on me.

23         THE COURT:  So it's a hundred bucks.

24         MR. SER:  I've interlineated.  It now shows 16 Cr. 477

25   with KMK in parentheses.

H38iwasp ag                    PLEA

1  Q.  Mr. Washington, Mr. Ser has given you a document to look

2  at.  Take a look at that, please.

3  A.  Uh-huh.

4  Q.  Does that document look familiar to you?

5  A.  Yes.

6  Q.  Is it in fact the plea agreement you have with the

7  government?

8  A.  Yes.

9  Q.  Did you go over this document very carefully with Mr. Ser?

10  A.  Yes.

11  Q.  Did he answer any questions you had about the document to

12  your satisfaction?

13  A.  Yes.

14  Q.  Do you feel you understand what the document says about

15  your obligations and the government's obligations?

16  A.  Yes.

17  Q.  If you could take a look at the last page, is that your

18  signature down at the bottom?

19  A.  Yes.

20          THE COURT:  Mr. Ser, is that your signature near your

21  client's?

22          MR. SER:  Yes.

23          THE COURT:  Before you and Mr. Washington signed this

24  document, you went over it carefully with him?

25          MR. SER:  Yes.

H38iwasp ag                     PLEA

1    Q.  Mr. Washington, you and Mr. Ser say that you've gone over

2    this document.  I'm in no position to quarrel with that.  There

3    are some things worth going over in person.  The first thing

4    you should understand is that while this looks like a letter,

5    it says Dear Mr. Ser, it's got letterhead, this is an

6    agreement, a contract you have with the United States

7    Attorney's Office for this district.  Do you understand that?

8    A.  Yes.

9    Q.  That's the whole point in having you and Mr. Ser sign it on

10   your behalf and having the government's attorney sign it on the

11   United States Attorney's Office's behalf.  Do you understand

12   that?

13   A.  Yes.

14   Q.  Because you are the only ones who signed it, you are the

15   only ones bound by this contract.  Do you understand that?

16   A.  Yes.

17   Q.  So, for example, I'm not bound by this contract because I

18   did not sign it.  Do you understand that?

19   A.  Yes.

20   Q.  Now, starting at page 2 and spilling all the way down to

21   the bottom of page 3, there is a discussion there of the

22   guidelines, right?  And at the bottom of page 3, see (c) says

23   sentencing range?

24   A.  Yes.

25   Q.  So according to you and the government, the guideline range

H38iwasp ag                    PLEA

1   that applies to your case, down there at the bottom, the

2   stipulated guidelines range is 262 to 327 months imprisonment.

3   Do you see that there?

4   A.  Yes.

5   Q.  A couple of things about that.  Three things about that.

6   First of all, I'm not required to agree with you and the

7   government that that's the guideline range.  Do you understand

8   that?

9   A.  Yes.

10  Q.  So I do my own calculation.  Sometimes my calculation lines

11  up with everybody's, sometimes it doesn't.  Second of all,

12  regardless of what the guideline range is, even if that is the

13  guideline range, remember that range is only one of a number of

14  the factors that have to be considered in imposing sentence, in

15  imposing what is a sentence that is sufficient but no more than

16  necessary.  Meaning that that range, that 262 to 327, does not

17  define the boundaries of what an appropriate sentence might be

18  in your case.  Do you understand that?

19  A.  Yes.

20  Q.  The third thing is as is noted there there's a mandatory

21  minimum of 120 months in prison.  Do you see that?

22  A.  Yes.

23  Q.  That's the floor.  I can't go below that 120 months.  Even

24  if I can go below the 262, I cannot go below 120.  Do you

25  understand that?

1    A.  Yes.

2    Q.  Now, on page 5 at the very top there's a long paragraph

3    there that says it's agreed that you're not going to file a

4    direct appeal or bring a collateral challenge and there's a

5    bunch of statutory sites there that deal with the federal

6    *habeas corpus* petition statute, not file a direct appeal or

7    otherwise challenge or otherwise seek a sentencing

8    modification, you're not going to challenge your sentence in

9    any way as long as the sentence is within or below the

10   stipulated guideline range of 262 to 327 months imprisonment.

11   Do you see that?

12   A.  Yes.

13   Q.  What that means is, remember the floor is 120 months, it's

14   not zero, any sentence that, well frankly any sentence that is

15   between 0 and 327 months you will not challenge in any way

16   including by way of appeal or *habeas corpus* petition.  Do you

17   understand that?

18   A.  Yes.

19   Q.  You have preserved your right to appeal any sentence above

20   327 months imprisonment.  Do you understand that?

21   A.  Yes.

22   Q.  Even if I were to impose such a sentence and even if it

23   turns out that was wrong, all that would happen is that you

24   would be resentenced, you would not get your plea back.  Do you

25   understand that?

1    A.   Yes.

2    Q.   There are some other appeal waivers.  You've agreed not to

3    appeal any sentence where the fine is less than or equal to

4    $350,000.  Do you see that there?

5    A.   Yes.

6              THE COURT:  It should be 250.

7              MR. SER:  I was just saying that to Ms Cohen.

8              THE COURT:  $150 in fines in one sitting.  Do you want

9    to change it there, Jason.

10   Q.   Any fine that's equal to or less than $250,000, not

11   350,000, you're not going to appeal or challenge in any way.

12   Do you understand that?

13   A.   Yes.

14   Q.   The next paragraph says that you are accepting the

15   agreement and pleading guilty because you are guilty.  Do you

16   see that there?

17   A.   Yes.

18   Q.   By pleading guilty you're going to waive any right you have

19   to withdraw your plea or legally challenge -- it says attack

20   the conviction -- legally challenge any conviction that results

21   from the plea based on the claim that the government failed to

22   produce certain discovery material.  And there's a reference to

23   a statute and to two Supreme Court cases.  Do you see that

24   there?

25   A.   Yes.

H38iwasp ag                    PLEA

1    Q.  The *Jencks Act* is a statute Congress passed that requires

2    federal prosecutors to turn over to people charged with federal

3    crimes the prior written or recorded statements of the

4    government's witnesses that relate to what the witness

5    testifies about.  Do you understand that?

6    A.  Yes.

7    Q.  The *Brady* case is where the Supreme Court said that we all

8    have the right under the due process clause to be provided by

9    the prosecutor who brings charges against us access to

10   exculpatory evidence or information that could lead to

11   exculpatory evidence which includes evidence or information

12   that could be used at sentence.  Do you understand that?

13   A.  Yes.

14   Q.  The *Giglio* case, the other case that's cited there, is

15   where the Supreme Court held that all of us have a right to be

16   provided by the prosecutor with information that could be used

17   to challenge the credibility of the government's witnesses.

18   What that paragraph says is that if the government has failed

19   to produce those materials that it's required to under *Jencks*

20   or those two Supreme Court cases other than if it fails to

21   provide evidence that actually establishes your innocence that

22   would not be a basis for you to take back your plea or legally

23   challenge any conviction that results in a plea.  Do you

24   understand?

25   A.  Yes.

H38iwasp ag                    PLEA

1          THE COURT:  Is there anything else about the terms and

2     conditions of the agreement that you want me to go over with

3     Mr. Washington?

4          MR. SER:  No, your Honor.

5          THE COURT:  Have you found any other typos?

6          MR. SER:  No, your Honor.

7          THE COURT:  Ms Cohen, is there anything about the

8     terms and conditions of the agreement that you want me to go

9     over with Mr. Washington?

10         MS COHEN:  No.

11    Q.  Mr. Washington, you're 100 percent comfortable you

12    understand the agreement?

13    A.  Yes.

14    Q.  Has anybody made you any promises that are not contained in

15    the agreement, any side promises, any oral promises?

16    A.  No.

17    Q.  In particular, has anybody promised you what your sentence

18    would be if you plead guilty?

19    A.  No.

20         THE COURT:  Ms Cohen, if you could summarize the proof

21    that the government would offer if Mr. Washington elected to go

22    to trial.

23         MS COHEN:  If the case went to trial, the government

24    would establish that in or about November of 2015 an

25    individual, who I'll call the reporter, advised an investigator

H38iwasp ag                    PLEA

1    from the Orange County DA's Office that the reporter, posing as

2    a 13 year old girl named Melinda, and using a decoy profile had

3    engaged in online communications with a person who was using

4    the screen name XTerrick.  The reporter also advised that

5    XTerrick had identified himself as at a 44 year old male, and

6    had indicated that he wanted to meet with Melinda for the

7    purpose of having sex.  The investigator advised the reporter

8    to continue the communications and set up a meeting with X

9    Terrick.  The evidence would show that from November 6 to

10   November 27 the reporter engaged in communications with the

11   defendant who was using the screen name XTerrick.  The evidence

12   would include the chat logs and the text messages as well as

13   photographs of the defendant that was sent by XTerrick to the

14   reporter.  In the chat, Melinda said that she was 13 and the

15   defendant told her that he was 44.  The defendant provided his

16   telephone number, gave his last name as Washington, the chats

17   were sexually explicit and in them Washington described in

18   graphic detail specific sexual activities he wanted to engage

19   in with her.  They made a plan to meet on November 28 in

20   Monroe, New York, and Washington said he would take a train to

21   Harriman, New York and then a bus to their meeting place.  The

22   evidence would establish that on November 28th when the

23   defendant arrived at the Harriman Metro-North train station he

24   was arrested.  Finally, the evidence would include a videotape

25   of the defendant's post-arrest interview.  During that

H38iwasp ag                    PLEA

1   interview he admitted among other things that he met a young

2   girl on the Internet while using a chat application from his

3   cellphone and that he made arrangements to meet her so he could

4   have sex with her.  And he also admitted that the girl told him

5   that she was 13 years old.

6   Q.  Mr. Washington, did follow what Ms Cohen had to say about

7   the summary of the proof that the government would offer if you

8   went to trial?

9   A.  Yes.

10  Q.  How do you wish to plead, guilty or not guilty?

11  A.  Guilty.

12  Q.  If you could describe what you did that makes you believe

13  you're guilty.

14  A.  I went from New Jersey to New York to meet the young lady.

15  I knew she was a minor.

16  Q.  What was the purpose of the meeting from your perspective?

17  A.  Sex.

18  Q.  Did this happen between November 6 and November 28 of 2015?

19  A.  Yes.

20  Q.  Before you meeting did you attempt to persuade or induce or

21  entice her to meet with you in New York?

22  A.  Yes.

23          THE COURT:  Mr. Ser, I take it there's no contest to

24  the interstate commerce piece of this.

25          MR. SER:  None, your Honor.

H38iwasp ag                         PLEA

1    Q.  Mr. Washington, did you know what you were doing was

2    illegal?

3    A.  Yes.

4            THE COURT:  Mr. Ser, anything else?

5            MR. SER:  No, your Honor.

6            THE COURT:  Ms Cohen?

7            MS COHEN:  If the defendant could just confirm that he

8    used his cellphone to make that plan with the girl.

9    Q.  Did you use your cellphone to make the plan with the person

10   you thought was a 13 year old girl?

11   A.  Yes.

12           THE COURT:  Anything else, Ms Cohen?

13           MS COHEN:  No.

14   Q.  Are you pleading guilty to this charge because you are

15   guilty?

16   A.  Yes.

17           THE COURT:  Mr. Ser, do you believe that there's a

18   sufficient factual basis to accept the plea?

19           MR. SER:  Yes, your Honor.

20           THE COURT:  Ms Cohen?

21           MS COHEN:  Yes.

22           THE COURT:  I agree.  I already found that

23   Mr. Washington is competent to enter a plea here today.  I find

24   that he's knowingly and voluntarily entered this plea because

25   he's been advised of the charge, the elements of the charge,

H38iwasp ag                    PLEA

1   the punishment he faces, both mandatory minimum and maximum, if

2   convicted of the charge, he understands how sentencing works,

3   and we've gone over what the agreement says, and Mr. Washington

4   has in fact acknowledged that he's guilty as charged in the

5   one-count information.  The Court will accept the plea and

6   enter a judgment of guilty.

7            Can we set sentence for July 5th at three o'clock?

8            MR. SER:  I'm in Delaware that whole week.

9            THE COURT:  For the Firecracker Tournament.

10           MR. SER:  Battle of the Beach.

11           THE COURT:  Battle of the Beach, that's even better.

12   For the record, that's baseball just in case anyone thinks Mr.

13   Ser is doing some muscle contest on the beach.

14           MR. SER:  Could we do something in the middle of

15   August?

16           THE COURT:  No.  I'm away that week.

17           MR. SER:  Sometime in August if that's amenable --

18           MS COHEN:  If it's going to be August could it be the

19   very, very beginning.

20           THE COURT:  August 1?  That's the very, very

21   beginning, right?

22           MS COHEN:  Sure.

23           MR. SER:  That's fine.

24           THE COURT:  At eleven a.m.  Mr. Washington, I

25   mentioned a while back that one of the things that gets read

33

1    before sentencing is the presentence report.  The presentence

2    report is a document prepared by the Probation Department, the

3    purpose of which is to provide as much information as is

4    practical under the circumstances about you and about the

5    offense conduct.  To prepare this report the Probation

6    Department will do it's own sort of inquiry.  They'll go talk

7    to Ms Cohen and talk about her version of the offense conduct

8    and they'll talk to Mr. Ser about the same and they'll also

9    talk to you.  And I'll note that Mr. Ser will be present when

10   they do talk to you.

11            THE DEFENDANT:  He will be there with me?

12            THE COURT:  Right.  And he may advise you not to

13   answer certain questions, which you have right to do.  But if

14   you do answer their questions, they're going to ask you about

15   your whole life, family history, employment history, health

16   history, you name it, because one of the factors that gets

17   considered is you and your personal history.  So they're going

18   to gather all that information and they're going to prepare a

19   draft of the report which they'll give to Ms Cohen and Mr. Ser.

20   And he's going to want you to help him go over it.  He'll visit

21   you and he'll give you a copy of it.  He's going to want you to

22   proofread it.  And make sure that you tell him if there's

23   anything in there that you know to be inaccurate so he can get

24   Probation to try to fix that in the report.  Once they get all

25   that, they distribute a final report to everybody including

34

1   myself.  So you want to make sure that whenever Mr. Ser says

2   you can answer the question you answer truthfully because you

3   want the report to be accurate particularly as it relates to

4   you and you don't want them to report that you're dishonest.

5   That's not what you want.  So that's the next step in this

6   process, just so you know.

7              Anything else, Mr. Ser?

8              MR. SER:  No, your Honor.

9              THE COURT:  Ms Cohen?

10             MS COHEN:  No, your Honor.

11             THE COURT:  All right.  Then we are adjourned.  Thank

12  you, marshals.

13             (Proceedings adjourned; 3:25 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25